Good morning, Illinois Appellate Court First District Court is now in session. The third division, the Honorable Justice Margaret S McBride presiding case number 21 dash 1595 consolidated with 22 dash 0281 Carmen Galarza, or direct auto insurance companies, direct auto insurance company versus pretty good culture and Christopher group culture as a minor by next best friend. All right, good morning to all of the attorneys and parties and those on zoom. Before we begin, I would like to ask the attorneys. How they have they have you had any discussion. This. First of all, let's let's have the attorneys identify themselves. We're going to be arguing before the court. Good morning. Good morning, please the court I'm Sam shell is that represent direct auto as Helen to end the penalty. Matthew Friedman. I represent Carmen Galarza as a plaintiff. Mr Friedman. Good morning. Good morning may please the court. My name is Jonah and I represent Freddie your coach and Christopher your coach as defendants appellants. Good morning to all of you. So, we have a consolidated appeal. And we have direct auto being both an appellant and happily, and then we have Mr Friedman and Mr. Would you pronounce your name again. Good morning. So I was just wondering, Mr Friedman and Mr montage. Have you discussed how you might want to share your time, or not, maybe you haven't. Yep, we have discussed that we would split the time. I'm not sure in what order we're going in. Alice is going first. And then, Mr. Natasha and I would split our time evenly, and I would go first. All right, and Mr. Is the lowercase number Mr. Is that direct auto as the appellant, Mr. Yes. All right. So the parties have no problem then with beginning with Mr shell us. No, I have no objection to that your honor. All right, then we have the rebuttal situation. Have you talked about that. You know, in terms of giving both sides. And rebuttal. What, what about that, we're going to do whatever you would like to do. Here's what I suggest, each side will have 20 minutes. And by that I mean Mr montage and Mr Friedman you'll have, you'll have 20 minutes total between the two of you so 1010. If you want to use all that or you can save some time for rebuttal. Maybe one of you could do the rebuttal. Mr shell list. You have 20 minutes as well. And may save some time rebuttal. What about that for Mr Friedman and Mr. Would you like one of you to have the rebuttal. Technically I suppose. What do you suggest. I think Mr montage should have the rebuttals. So, we'll save a little bit of time if he would like, you know, five minutes at the end for. All right, so that sounds great. And with that then we'll begin, Mr shell list, you may proceed. Your honor I appreciate the opportunity to speak in oral arguments, but I'll get right to the cut right to the chase. This policy does not cover liability for pedestrians. So it also does not cover uninsured motorists for pedestrians. The Rosenberg case, I think is exactly on point. It says. The Illinois statute pertaining to uninsured voters coverage does not specify that pedestrians must be included in under or uninsured motorist. So the case is exactly on point. Although counsel tries to distinguish the facts of that case, I think I want to emphasize in a declaratory as in all coverage actions. The court makes a declaration of what the state of the law is, whatever the facts of that case. That is the law, but I'd like to move to a 2nd point that both the lawyers seem to emphasize. Indirect versus marks and in other cases, the court said, if a person constitutes and insured for purposes of liability, we have to cover them for you. We don't cover pedestrians for liability. I want to emphasize is a driver. She may or may not have been negligence in. I mean, is a pedestrian. She may or may not have been negligence in the parking. Mr. Mattage his clients is a young person driving a bike late at night. He may or may not have a light on. He may or may not have been negligent. But here's the key, whatever they did or didn't do, we don't have any obligation to cover liability. For pedestrians, whether they're on a bicycle or on foot, because of that. We shouldn't have any obligation to cover you. Everybody that lives and works downtown sees these lanes down here where pedestrians, whether on a bike or walking can be negligent. This is not a pedestrian policy and either party argues that we're required to cover them for liability. I want to emphasize. So, that leads to the squire case and some other cases. My Lord. Mr. Schultz before you move on to the other cases. I just had a quick question about the Rosenberg case. The Rosenberg case pertains to a resident of our retirement community that it was and the question was whether or not this resident was insured under the retirement communities insurance policy under the uninsured motorist. So isn't that factually different than what we have here at hand. I have 2 answers. 1 is yes, it is factually different, but in Illinois, 1 can be a named insured, but not a person insured for all purposes. And the example would be in part 1, the liability section, which nobody challenges. These people may be insured, but they are not persons insured for liability. The liability section says, because we all liability coverage for 3rd parties caused by accident arising out of ownership, maintenance or use. They are an insured, but they're not a person. Sure. That's the 1st distinction. The 2nd distinction is when reviewing the section, I believe Rosenberg is still on point because it gives the general principle. That when reviewing insurance contracts, section 143, unlike many other states does not require pedestrian. So, I believe it's on point for both reasons. In Squire, which relates to Justice Rhea's question. Both lawyers cite the 1st part of the sentence, but don't go on with the and and it's a short sentence. So let me just. It is well settled that section 143 requires coverage of insured persons, regardless of the motor vehicle, the uninsured motorist is driving. But they don't go on to the end. And regardless of the vehicle in which the insured person is located. Well, a pedestrian is neither. A passenger nor a driving. The pedestrian is not in the vehicle. So, the square case, and the series of cases that are cited with it. Favor our side of the case and indeed. Follow the principle that we don't get a requirement for pedestrian insurance. It would be on the. Respond, I guess the respondent and so the other side argues that you should follow approximately. The coverage that you have under liability, we agree with that. There is no coverage under liability for these directors and let me give you this example that I think everybody would think of. Let's say these pedestrians, whether on a bike or walking. Are negligent and involved in a lawsuit. Well, clearly we wouldn't owe coverage to defend them. So, why would we owe coverage for when the principle is supposed to be approximately. Similar to liability coverage, these parties are asking to expand well beyond liability coverage that we. Obviously don't have, and I don't think any carrier sells insurance for. Pedestrian use. The star case follows the same principle. That concludes adoption of the plaintiff's position would result in our making a new contract of insurance. And I want to emphasize something else. This policy has been in effect for a long time. And Aston versus founders and in other cases. The courts have said, when you have a policy that's out there in the Department of insurance approves it and continually approves it. There's a pretty strong presumption that it didn't violate the insurance code, at least in the view of the department. Well, the department isn't really going to decide this case. So are they? No, but I think that your honor could. Choose to show some deference to the fact that the department under section 919.80 administrative code has said to us and all the carriers. We won't allow that. Or we will allow flaws. Why? And they didn't do that. But would you agree that does not support what your position is today? No, judge. And here's why Merck says, you must cover a passenger. It has nothing to do with the pedestrian because the passenger was not in an insured auto. Right and that's because of the language judge of the case. I just cited squire. Section 143 requires coverage of insured persons, regardless of the motor vehicle, the uninsured motorist is driving regardless of the vehicle in which the insured person is located when injured. But these pedestrians are not interviewed. So, I would agree that Merck says, regardless of the vehicle in which the insured person is located. In other words, if the insured person is located in our vehicle, or somebody else's vehicle. Um, has to cover it because of those words, but pedestrians are not. But you're saying should never cover pedestrians and aren't you. I'm saying that this policy says that doesn't cover pedestrians and the code doesn't require other words. Go ahead. Sorry, I didn't mean to interrupt you. What about Daxter or Dax tater, whatever, however you pronounce it. You didn't talk about that one. Fairly old 1st district case that squires adopted, so to speak, so to speak, but I think that squires is the more modern case, and the language of squires and start and all the other cases use the words, regardless of the vehicle in which the insured person is located. And the simple answer is these are pedestrians not located. I would also further answer your question under Merck's judge, the court justice, the court said, if a person constitutes an insured for purposes of liability coverage under this policy. Then we have to cover you up. They do not constitute a person insured under liability. Well, is there any. Is there any question in this case that plaintiffs are insured. And when I say plaintiffs, I mean, plaintiff happily and plaintiff appellant. They are insurance, one is an insured one is an additional insured but that does not mean they're a person insured for the purposes of all coverage. So, so, yes, they are. Yeah, so going back to Rosenberg. The issue there was primarily initially, and without question, whether that individual was an insured that's not the issue here, is it. Yes, but in looking at Rosenberg, when they looked at those facts, they then said, does public policy require the coverage of pedestrians and they said no. So the principle applies here. In other words, my analysis would be that you look at what the policy says, and then say this public policy require otherwise. If public policy doesn't require otherwise, we're allowed to not cover pedestrians. Because policies are written by carriers and the code doesn't require otherwise. I mean, I hope that's not too blunt an answer, but if we're all if we're not prohibited. From not including pedestrians. And if public policy doesn't require us to. include pedestrians, then there's no reason for us to include pedestrians, we're not required. And that's what six judges. As you know, there are a series of appeals on this and as I noted in the briefs. Judge Atkins, despite my great respect for Judge Atkins was the only judge who disagreed. There's another appeal that just was issued from another law division judge, Judge Otto. We're not going to, you know, go off and let you sign a case that has a bit. Now, in your case, you're appealing Judge Atkins decision, are you not? Yes, I'm appealing Judge Atkins decision and responding to the appeal. All right, so, so we have a preliminary question of jurisdiction. Judge Atkins, you filed a two count complaint. Correct. I'm sorry no the complaint had two counts rather I misspoke. There is a question of jurisdiction which was raised, and I answered, and it is not 100% clear that. Well, let me ask you this. There's a count that was never ruled on. Is that correct? That is correct. There is no 304A language here. Is that correct? That is correct. So I have said in my brief, if you feel there is no jurisdiction in the Galarza case, then we should conclude the argument on the Juricoga case, because they're consolidated. There is no issue of jurisdiction on the Juricoga case. Okay, but even though they're consolidated. This court has a duty to consider its jurisdiction, regardless of the fact. So, I don't know what you mean by, there's a question. We have to address jurisdiction, one way or the other, no matter what the parties say you can't waive it it can't be conferred on us by estoppel. So, my question is, is there, there is a count remaining. Correct. Yes. There was never any 304A language. Correct. So how does this court have jurisdiction. The argument that we made in the brief was that since the declaration of coverage under section 143 is that there's coverage. The section 155 plan doesn't come into being until it's returned from AAA. What do you mean by come into being. In what case would you cite for the suggestion that somehow there's jurisdiction on this particular part of this appeal. The argument I cited I don't have. I don't remember the name of the case I cited but I cited a case that said, when all of the issues and equity have been concluded section 155 is not an equitable action. So the court concluded the declaration of whether there's coverage and there was nothing for them to do at that point, section 155 only applies after there's an arbitration and that didn't take place. So that was the argument I made, if I'm wrong. Then I said in the brief that the galarza case should not proceed, and we should proceed with their cocoa, but I did acknowledge that yes you did. That's why I brought it up. You did. And so if we go back up for a moment. What happened to the section 55 claim. Nothing because this case went on appeal and Mr Friedman did not go to arbitration. Under the US. If he had gone to arbitration. And if there was a if he won and if there was an award, he could proceed with his 155 plan, there's nothing 155 requires the entry of a money judgment or a finding before you can proceed. So there's really nothing for him to do under 155. That's why I said it really isn't actionable yet because nothing happens until there's an award. You can't get 155 until he wins the UN, if he were to win it, but I did acknowledge when he raised in his brief the issue. He didn't raise it as jurisdiction but he mentioned the 155. So as Justice McBride stated, there is a question I acknowledge whether your honor should decide the larger case, but there is no question you should decide the hero coca case, and the principle of course is to say, um, Okay, you're gonna have more time. I understand that I asked. Certainly, so my suggestion now is that we move to Mr. With that, is that acceptable and agreeable. As the other appellant. Mr Friedman, Mr Mattage is that that is agreeable. Yeah, yeah, yeah, I have one question though for Mr shell is sure, go right ahead. Mr jealous. Would you agree that a homeowner's policy would not cover a pedestrian because there's an exclusion for automobiles. Yes, sir, I will. And would you agree then that pedestrian really doesn't have any insurance coverage that's out there unless they get a specific policy written for them. So, otherwise, pedestrians are not covered by any type of insurance for accidents. I would strongly that that is the case that we didn't sell a pedestrian a policy. There's no requirement we sell a pedestrian a policy. There's no mandatory insurance or on to disclose for pedestrians. So I would agree 100%. Okay. And would you agree that this case really hinges on what is the public policy in the state of Illinois. I would agree with half of that judge, I would agree that. Yes, I guess I would agree that either we either you will decide we're required to have insurance for pedestrians or you won't. Yes, that's true. And that's why I cited in answer to Justice McBride's question, the declaration of the court in Rosenberg, which says the public policy of Illinois is section 143 does not require coverage of pedestrians and you were under insured cases. So I would answer that yes. I hope I answered. All right, Mr. Yes, may it please the court and councils. The circuit court earning granting summary judgment and paper of direct data and should be reversed for three reasons. Number one, Christopher is a legal insured under the subject policy. Number two, section 143 of the Illinois insurance code allows any person insured under the policy to recover damages from accidents caused by uninsured and hidden run drivers. And three, the language and the direct auto policy, as written, affords less coverage and section 143 a intended, and therefore, it is against public policy and cannot be enforced. I have a question. The policy amounts are modest, say the least right relatively modest. Given the relative affordability of the policies isn't direct auto entitled to limit its risks. They are entitled to limit their risks to the extent allowed by law to the extent that the contract entered between the private parties comport with the Constitution of our state with the statutes of our state and with the prevailing case law. When it does not, as in this case, when it violates section 143 a, it violates public policy and should not be enforced. And there are a series of cases that discuss this specific issue regarding the language used specifically in the policy. And in the public policy that's reflected in 143, Mr. Or this suggestion that it's not about whether they're persons it's about. I think the statute covers, any person struck by a motor vehicle the indefinite article, a is important as well. Any person, and a vehicle. So the statute itself as read indicates that an insured, you have to qualify as an insured that is the requirement of 143 a, and as an insured, you are then able to collect for damages caused by hit and run and or uninsured motor vehicles. That is the one requirement the statute has. Now, the legislature has added exclusions further on in the statute, there's an exclusion for a second own vehicle not declared in the policy. So this legislature is very well aware of how to make exclusions in the policy. They chose not to do so they chose to make it vague on purpose, so that in its spirit is for the general welfare of the public in the state of Illinois, to protect insureds from accidents caused by hit and run drivers uninsured drivers to make them whole. When the, you cannot sue for liability against someone who fled the scene, and we place them back in the position they would have been had that driver had insurance. So I believe the legislature wrote it vague and not vague wrote it broad, excuse me, on purpose to encompass all insureds and allow them that ability to collect under that policy. But direct auto is arguing that you haven't read the whole sentence, right, that you end that person. And, you know, their contention is that the insured code code applies to ownership maintenance or use of a motor vehicle. Isn't that correct. That is correct. All right. So then why should the policy cover pedestrian because there's nothing in there indicate that it's a coverage for a pedestrian you're talking about ownership and maintenance of a vehicle. Well, their policy language as written states must occupy the covered vehicle. There's no language specifically in their policy regarding pedestrians regarding passenger anything the like. Now, the policy in question was issued to Christopher's father Christopher is a minor, he does not have a driver's license he doesn't drive. It was a validly issued policy for use of the motor vehicle that Freddie occupies. That is the requirement that under the state of Illinois, the Financial Responsibility Act he is required to maintain minimum coverage to operate his vehicle. The uninsured motorist provision is statutory at once you qualify as an insured, and as a resident relative living in the household with his father he qualifies uninsured, he is entitled to reap the benefits of the uninsured motorist provision in that policy. So, in the event that he is injured by a hit and run or uninsured driver. So we're not asking here that if he's on his bicycle, he should be held liable for causing injuries. We're talking to separate issues under state statute. He is required to be covered the legislature had every opportunity to add exclusions in the statute, like they did with a second owned unlisted vehicle. They know how to add exclusions, they chose not to again purposefully, they left it broad to encompass all insurance who are injured. But aren't you asking us therefore to include that into into the statute and, you know, you know we're a court we're not the legislature. So how can we add that language in the language itself covers the insured. It doesn't specify pedestrian or driver so the court should follow the legal precedent, as in the squire case where a pedestrian was struck in Glenelg on a sidewalk. In that situation, to you and policies were allowed to be stacked to make her whole Supreme Court case from the 1970s, that is the prevailing law in our state that should be followed as they allow recovery under the UN policy, going back to Merck's again. That language as direct auto rights it. You must occupy the covered vehicle. In fact, in the Merck's case direct auto argued that a passenger in a separate vehicle is not allowed to collect. Then, in our case, after they lost that argument in our case, they're saying, well of course we intended to cover passengers. We just never intended to cover pedestrians. Well, the plain language is clear, but their own definitions of the term are ambiguous. You can't have it both ways here. And again, the court, our appellate court has agreed that the language as written violates public policy it affords the insured less coverage than 143 intended. Going back to the dock stater case as well, which your honor cited earlier that the injured person was on a motorcycle. The dock stater court analyzed the case law throughout the state of Illinois and stated our Supreme Court will interpret section 143A of the insurance code as a direction to insurance companies to provide uninsured motor vehicle coverage for insurance, regardless of whether at the time of the injury, the insurance occupied or operated vehicles declared in the subject policy. Direct relies heavily on the Rosenberg case. And as we discussed, the central issue there was, is the injured person uninsured of a corporation. If Rosenberg were to stand for the position that direct auto contends, then this appellate court would have written a very short opinion stating under Illinois law, a pedestrian cannot recover uninsured motorist benefits. Therefore, no further analysis is required. That would have been the end of the case, but the court does not do that. They analyze the analysis centered on whether he wasn't insured and why they do that because you have to be an insured under the policy in order to be entitled to recover uninsured motorist benefits. Illinois law does not exclude pedestrians from recovering under this under their own uninsured motorist provisions. The Rosenberg case also cites the Bruna versus State Farm, a first district case, when the language the court uses says the intent of the statute is to protect and insure generally against injuries caused by motorists who are uninsured, generally against injuries. No specification. In Merckx, the court did not add in. We are providing coverage to Merckx because she was a passenger in a motor vehicle. The court's holding was that the provision requiring her to be in the covered vehicle is unenforceable. Mr. Mitaj, I'm going to ask you to try to sum up because we'll shortly move to Mr. Friedman, but you will also have time for rebuttal. I will, Your Honor. The first district in Rosenberg stated this court is obligated to ensure that individuals insured by uninsured motorist policies receive that coverage when injured by an insured motorist. It's important to look at the intent of the statute, which is to protect the general public. I've listed several cases here from our state that have over and over again overturned policies that contain similar, if not the exact language that direct auto has in their policy. When an insurance policy, that is a contract. We have an obligation to respect contracts between parties, but when they violate the insurance code and they violate public policy, they cannot be enforced. And for these reasons, I ask that this court overturn the decision of the circuit court and fight in favor of the defendant's appellants. Thank you. Mr. Scheles, I'm going to move now to Mr. Friedman. There's no objection to that, is there? All right. Mr. Friedman, you may proceed. It may please the court, counsels. Again, Matthew Friedman, I represent Carmen Galarza, plaintiff appellee. Briefly, I just wanted to talk about this jurisdiction matter that the court raised. Just to give you a little bit of history, we, myself on behalf of Carmen Galarza, made a demand for arbitration when we sent our letter of representation to direct auto insurance. Their only response to that was to deny coverage. We then filed the action for declaratory judgment, and as you know, Judge Atkins then ruled in our favor. In the Chancery Court, I agree that no 304A language was included in that order, and despite that, Mr. Scheles filed an appeal. As part of our demand for arbitration, under 304A, under 143A, I'm sorry, we appointed our own arbitrator, and we never heard back from direct auto that they wanted to go to AAA until I read Mr. Scheles' appeal. If Mr. Scheles wants us to arbitrate this matter, rather than appeal this, he should have done so. But if the court believes there's no jurisdiction, then they should remand this matter for arbitration, and we can arbitrate the matter, and Judge Atkins' decision will be upheld. So, I'm not sure. Well, Mr. Friedman, how do you justify our jurisdiction? I mean, there's no 304A language. There was a second count to the complaint. The complaint asked for sanctions under 155 for vexatious delay. So, the fact of the matter is whether it's an action in law or an action in Chancery for a declaration, the count remains. It was never resolved. So, I don't know how – I would like to hear from you whether this court has jurisdiction. You know, I think you raise an excellent point. It may not have jurisdiction. I'm not an expert in that area, but it may not have jurisdiction. Mr. Shallows should have either asked Judge Atkins for 304A language after his ruling, before he appealed the case. Since he didn't do so, then, you know, he's the appellant. It's his burden to do so, and he didn't do it. So, maybe this matter needs to be remanded for further proceedings. But I – With that, proceed with your argument on the merits. Okay. This – you know, my client was severely injured in an automobile collision where she was hit by a hit-and-run driver. She had purchased direct auto insurance. She had been paying premiums for many years. And it's not as though direct auto is denying coverage because she didn't pay her premiums or because she didn't cooperate with – under the cooperation clause in the policy. They just simply denied coverage because they're a substandard insurance company. Direct auto insurance has taken this very issue up on appeal. In the Merck's case, it was rejected by the 2nd District. And now, because they're rejected by the 2nd District, they think, well, let's try the 1st District. Maybe we'll have better luck there. This is – you know, this court cannot reverse the decision in the Merck's case. This court cannot reverse – No, but we're not – Well, it clearly says that we're – you know, we have one appellate court in this case, in this state. And I think this court does have to respect the decisions of other districts when there's – when there is precedent. I think we have to follow the Supreme Court. And certainly, one of your positions has been that the Supreme Court would interpret this provision as against public policy. Right. I mean, there's over 50 years of precedent here, you know, especially in the Squire case, which establishes with pedestrians, involving a pedestrian, stating that pedestrians are covered under 143A. This is a – you know, I just wanted to get to a couple of things that Mr. Schell has raised. One thing he argues is that in his briefs and before the court today is that the point of – you know, he says that the point of uninsured motorist coverage is to put the insured in the same position as his liability coverage. All right. The cases all talk about the point of uninsured motorist coverage is to put the insured in the same position as he would have been in had the at-fault driver had liability insurance. But, you know, he's trying to say that it's to put the insured in the same position as his liability coverage. He doesn't cite any case law, no authority, no statutes, not even a case – not even a law review article. He has no authority for this at all. Well, is there a difference between the public policy as established in our Constitution, statutes, and case law that would suggest, Mr. Friedman, that there actually is or there are separate public policies behind everyone having liability insurance and under uninsured coverage? Well, the Financial Responsibility Act requires that everybody have liability insurance, and the state legislature saw fit to create 143A and pass that legislation and require uninsured motorist and underinsured motorist coverage and coverage in situations where there's a hit and run. And then that statute's been interpreted by the courts to include pedestrians and passengers in vehicles that are not insured, that are not covered under the policy, like in the Merck's case. You know, it's interesting that, you know, he – you know, Mr. Scheles raises this argument that, you know, the policy doesn't cover uninsured motorists when – or pedestrians because they're not covered for liability. But, you know, in the Merck's case, you know, a passenger wouldn't be covered for – under his own liability insurance if for some – somehow the passenger in a vehicle caused the collision by, for example, say they were drunk and grabbed the steering wheel and caused the car to go off the road, the passenger's own liability insurance wouldn't cover it. And yet, in the Merck's decision, they found that there was coverage. So he's trying to distinguish, you know, the Merck's case saying it involved a passenger, not a pedestrian. Well, you know, it's – it doesn't hold water. The – you know, in the Rosenberg case, I wanted to talk about that briefly. The – in the Rosenberg case, you know, the – squarely in front of the court whether or not that person was an insured under that corporate policy. Right. And the Merck's court, again, they distinguished Rosenberg, and they said that that decision hinged on whether, you know, again, the victim in that case, the decedent, was a named insured and, as you've mentioned, was not a named insured in that policy. So – Well, Mr. Shellis is arguing that the insured here is an insured if there's an operation of an insured vehicle, but the insured is not insured if that person is walking or is a pedestrian. Is there a distinction? No, there – yeah, there is a distinction because under 143A, pedestrians are covered under – and this has been interpreted by case after case after case in Illinois to say that people who are occupants of other vehicles, pedestrians, cyclists, and others, are covered under 143A if they are named insured. I think, you know, as I think Mr. Mataj mentioned, that the analysis starts with whether the person is a named insured. In this case, direct auto admits that the two plaintiffs in this case, you know, Carmen Galarza and Mr. Mataj's client, are named insured. So, you know, in Rosenberg, they never got to the other issue as to, you know, whether 143A applies because the person wasn't even an insured. Now, once you establish that that person's an insured, you have to figure out, well, does 143A apply and can the person make an uninsured motorist claim? And since the person is a named insured and they were struck by an uninsured driver or by hit-and-run vehicle, they can recover under their policy. That's the public policy of this state as reflected in 143A, as reflected in all of the case law, especially in Squire. And I don't think this court can reverse the Squire decision. It's a Supreme Court case. Mr. Freeman, I have a question about the policy, right? Yes, I understand correctly. Direct auto is claiming that both Galarza and, I apologize if I mess up the name of Gorachoka, are not insured under part one of the policy, the liability aspect of the policy. Therefore, doesn't it follow that they wouldn't be insured under part two, which is the uninsured motorist of the policy? If they're not insured under one, they're not insured under the other, right? No. Again, we're confusing two issues. It's a red herring to talk about liability insurance and uninsured motorist coverage. As long as they are insured under the policy, they can recover uninsured motorist benefits, as the same issue came up in the Merckx case, the same issue came up in the Squire case. It's come up in other cases, such as the Rockford Mutual case. There's several other cases like the Progressive v. Liberty Mutual and Gillen v. State Farm. There's a number of other cases where this same exact issue has come up regarding pedestrians or people who are passengers and other vehicles that weren't insured under the policy. The courts have all ruled in favor of the insurers in those cases and against the insurance companies. It's the public policy of this state to protect motorists, to protect insurers who purchase insurance, pay their premiums, and they are entitled to coverage under Illinois law. There's no reason why this court should not uphold the decision of Judge Atkins. Again, if there's jurisdiction, I'll let you figure that out. This is a clear case of where we have over 50 years of precedent, and I don't see how this court can overturn 50 years of precedent that's been established in this state. We're going to now, at this point, we'll return to Mr. Schellest, and then Mitaj will go after that. I appreciate the opportunity. I want to ask you a question based on your earlier suggestions about the policy is not to insure persons. Looking at the language again in 143, it says, no policy insuring against loss resulting from liability imposed by law for bodily injury suffered by any person arising out of the ownership of a maintenance use shall be renewed. We've got this language in the first sentence about any person arising out of the injury, and then it says shall be delivered, issued, unless coverage is provided in limits as those set out in the vehicle code for the protection of persons insured there under, who are legally entitled to recover damages. Earlier you mentioned this, but we are going to have to interpret this policy under 143. How do you reconcile that when the policy is about a person here who was insured? You would agree with that. We have a person here who was insured, and we have a policy issued, and there's no debate that the person was insured. How do you reconcile that with the other language that also says for the protection of persons insured there under, who are legally entitled to recover damages from uninsured motor vehicles? I distinguish it by Justice Reyes's question. A person can be a named insured, but not a person insured there under. Under part one of the policy, the liability. Nobody challenges in this case that we do not owe coverage for what these two people did if they're negligent to third parties on their bike or as a pedestrian walking, who can be negligent, and we've all seen that. We do not. Nobody challenges. We do not owe coverage to them for their negligence to third parties. So, that shows you the distinction between a person insured there under, using the words of the statute, and a named insured. Yes, Galarza is a named insured. However, Galarza is not a person insured under part one because he did not cause an accident arising out of his use of the ownership maintenance for occupation of the vehicle. That's the distinction. He is an insured, but not a person insured there under part one. That follows to Merck's, the exact language. So, you're saying he's not an insured under part one? He's not a person insured under part one. He is a named insured. A named insured is not a person insured for all purposes. And that exact example, nobody claims we have to cover liability for pedestrians or bicyclists who cause injuries. None of these parties claim that in their briefs. But this case doesn't involve a bicyclist or a pedestrian who caused injury. Well, but it does, because under Merck's, they say if we have coverage under part one for liability, we owe coverage under part two for UF. But we don't have coverage under part one, therefore we don't under coverage for part two. In other words, so to try and answer your question, protection of persons insured there under doesn't say named insured. So when you're interpreting, I'm sorry. It's the public policy then. Are you saying that there's no nuances at all between the public policy for liability insurance that's required under the Responsibility Act and the public policy in section 143A? I would say the nuance is certainly that we do not owe more coverage for UF than we owe for liability. We do owe coverage under UF where we owe liability coverage. But since we don't owe any liability coverage, we certainly don't owe UF. On your counsel's interpretation and following again Justice Reyes' question, if you were to rule that we owed UF when we don't owe liability, you are deciding we owe more coverage for UF than liability. Section 143 doesn't require that. I think everyone agrees here. The only issue before this court is what is the actual public policy behind section 143. And I will give you two answers. And I know it sounds repetitive, but I just want to emphasize. Under Merckx, they say the public policy is if a person constitutes an insured for purposes of liability under a policy, they then must be a person that constitutes coverage under UM. In Merckx, the policy holder wasn't even in an insured vehicle. Is that right? And he doesn't need to be. Because the first part of the sentence that we cited before from Squire says regardless of the motor vehicle, the uninsured person is in. And that follows Mr. Friedman's example. Let me give you this example that he mentioned. A passenger takes control of the vehicle, you know, grabs to the wheel and causes an accident. We owe liability coverage. Why? Because his use, occupation, and maintenance of a vehicle, he's a passenger in a vehicle. We owe liability coverage. Under Merckx, we also owe UM for that person. But a pedestrian is different. That's not the same thing. So following Mr. Friedman's exact example, which I would urge you to use as an example. The passenger takes control, grabs to the wheel, causes an injury or an accident. Don't doubt in my mind that passenger, we owe liability coverage under Part 1. How do you distinguish Squires? That's the binding Supreme Court precedent we must follow. Because it uses the following words. It is well settled that Section 143 requires coverage of insured persons regardless of the vehicle they're in. And regardless of the vehicle in which the insured person is located when injured. He is not a person, quote, in which he's in a vehicle. It says in Squires, regardless of the vehicle in which the insured person is located. The insured person is not located in the vehicle. Just that simple. So, Mr. Chalas, are you saying, I'm sorry to interrupt, but are you saying that the pertinent provisions, the pertinent provisions in the direct auto policy for Galarza and Cochoa and Merckx are not the same? No, they are the same. Because in Part 1, it says that we owe liability coverage for the insured or rising out of the ownership, maintenance, or use of any vehicle. Well, we don't owe coverage for either one of them because they're not, whether on a bike or a pedestrian. In Part 2, which is the U.N. section, it says caused by accidents while you're an occupant in a vehicle. Well, they're not an occupant in a vehicle. Yes, we owe coverage for occupants in vehicles. Yes, as counsel mentioned, the courts have said you can't limit it to the insured automobile. It has to be any vehicle. Why? Because Squires, to answer Justice McBride's question, puts the two parts of the sentence together. That's the key to this case. It says, regardless of the motor vehicle the U.N. driver is driving, and regardless of the vehicle which the insured person is located in. The insured person is not located in a vehicle. Lastly, a very quick rebuttal. Counsel for Mr. Mataj mentioned exclusions. As we know from Liberty Mutual, the case he mentioned, Section 143 doesn't write exclusions. The policy is written. It either follows or doesn't follow the public policy of Illinois. But there is a strong presumption against rewriting policies, as Justice Reyes, I guess, referred to. The case law is clear. We don't overturn policies unless it's a very clear burden met by the other side, because we enforce contracts. It's written. And we've had this. So you're saying the line should be drawn whenever a person is in a vehicle. But once that's gone, bicyclist, walking, there's the line. I'm glad that I made myself clear. That is 100% of my case. Okay, that's my case. That is Squires' case, that's the Rosenberg case, that's the Merck's case. The line is this. If you're occupying a vehicle, we owe coverage under liability, and we owe coverage under Part 2. Passenger, driver, sitting on the roof, whatever. Well, not sitting on the roof, but we owe coverage. If you're a pedestrian, you are not occupying a vehicle, and the words of the statute are clear. It says, regardless of the vehicle, Squires, the Supreme Court, regardless of the vehicle in which the insured person is located, they aren't located in a vehicle. So Squires does not require coverage. And the line is clear, and the line should also be drawn when in doubt in force of a contract that was freely entered into and that should be enforced. The last distinction I would emphasize to Justice McBride's questions, to all of you, but to Justice McBride's question, is the vital distinction between a named insured and a person insured. Nobody disputes under Part 1 that these folks are named insured or additional insured, but nobody disputes they're not persons insured for the purpose of liability, and nobody is challenging that we owe liability. And I want to emphasize the example I gave you. Whenever, I don't know if these parties were negligent. I don't know if this young man had his lights on or whether he was negligent. That's not before us today, but he could have been, and we don't owe liability coverage for his actions. Why would we owe more for UM? That's the key. We owe equal, well the cases say approximately equal, UM coverage to liability coverage. Since we owe no liability coverage for pedestrians, why would we owe UM? Justice Rios has a question. Yeah, how would you define for us occupier? The cases talk about, there are a bunch of cases that discuss occupation. I don't have those in front of me, but certainly a passenger occupies a vehicle, and that's what Merck was talking about. There are cases where there's a dispute of whether somebody is a pedestrian or a passenger. You know, there's like a question of getting in the car or whatever it is. The only answer I would give you is in this case, neither of these people claim to be occupants of the vehicle. Clearly, he's in a bicycle, and clearly she's in a parking lot as a pedestrian on foot. So there are cases where there's a question of fact, whether they're a pedestrian or a passenger. But to follow your question and Justice McBride's example, that's the bright line. If the facts decide they're a pedestrian, we don't have any requirement to owe coverage. We could have covered pedestrians if we chose to, but we aren't required to. That's the bright line. I thank you for the opportunity to speak to the three of you. It's always an honor to be here. Mr. Mitaj? Your Honors, I would like to reserve a few minutes for Mr. Friedman since we did jump back and forth in case he wants anything to say. But I want to make it abundantly clear for the court that the Squire case, the Supreme Court case, Squire was a pedestrian standing on a parkway hit by an uninsured vehicle. There was no use, control of a vehicle in that case. She was a pedestrian and she was entitled to stack two uninsured motorist provisions to make her whole for her injuries. Christopher Ghiracocha here is a 15-year-old kid. He cannot drive a car. He doesn't have a valid license. If he were driving, we would be here for different issues. If Mr. Ghiracocha was in a friend's car as a passenger, that friend was uninsured and a hit-and-run vehicle strikes them, by Mr. Schell's reasoning, Christopher, again, would not be entitled to collect uninsured motorist because he wouldn't be responsible for liability. How can he be? He can't drive. He doesn't have a license. That is incorrect with our current state law. 143 provides an insured coverage when struck by an uninsured motor vehicle. This was a remedy. The aspirational goals of our state are to provide a remedy for every harm. If we interpret the statute and allow exclusions such as the one in direct policy to continue, it will be a race to the bottom with insurance companies adding exclusions, collecting premiums, and avoiding paying for coverage. There was a case of Liberty Mutual Progressive. This was a pizza delivery driver struck a pedestrian. There was an exclusion. Is this case in your brief? This was cited in Mr. Schell's brief, Progressive v. Liberty Mutual. The driver was using his mother's vehicle to deliver pizzas. He struck a pedestrian. Progressive denied, stating, we have an exclusion for using the vehicle for business purposes and or delivery. That exclusion applied uniformly to the named insured and any permissive insured. The court stated that liability is denied. However, that pedestrian was made whole because he was able to collect under his uninsured motorist coverage. The same case goes for Glyndon, also cited by Mr. Schell's cases, where a paramedic arrived to the scene, got out of the vehicle to attend to an emergency, was struck by a hit and run driver. She was not in a fleet vehicle. That is the distinction for the exclusion, for police officers, paramedics. If you are in a fleet vehicle that is regularly furnished to you, you cannot collect under your own uninsured motorist policy. However, here, because she was a pedestrian in the street, tending to an emergency, she was able to collect under her uninsured motorist policy. And the real argument of the case was whether there's a set-off for workers' comp or not. But she was able to collect. Again, the aspirational goal for our state is to protect the general welfare of our citizens. If we enforce a policy that states you must occupy the insured vehicle, again, that language has been struck down over and over again by the Supreme Court, by the appellate courts, as violating Section 143A. And I yield the rest of my time to my co-counsel, Matt Friedman. Mr. Friedman, would you like to make a brief rebuttal? Your microphone's off, though. I apologize. Thank you. Appreciate that. I would just briefly, under the Merck's case, I think this court needs to follow it. The Davis v. Pace bus decision in the 1st District favorably cited the Merck's case and held that that was good law. The Davis case, although the facts were a little different, cited the case and held that, in citing Merck's, that an insured must be placed in substantially the same position they would occupy if they could identify the at-fault driver in a hit-and-run case, which is similar to the cases before you today. The purpose of 143A is that insureds must be placed in the same position as they would have been in had the at-fault driver had the same limits as the insured. Mr. Scheles and Direct Auto cannot issue a policy to their insureds that doesn't cover pedestrians, that doesn't cover cyclists, that doesn't cover anyone who's hit by an uninsured driver as long as they are named insureds in the policy. They have to be covered as long as they are listed in the policy on the declaration page as named insureds. Trying to split hairs over Part 1 or Part 2 of the policy is irrelevant. As long as they are listed as named insureds, then they must be offered uninsured motorist coverage that covers them, whether they're hit by an uninsured driver who's a pedestrian or whether they're occupying another vehicle that's not listed in the policy. They must be covered. That's the law in Illinois. That's the public policy of this state. Thank you. I don't believe, based on everything that we've had here today, that there's further comment required by any of the parties. Would you agree? Any disagreement? Does everyone have their opportunity? Yes, we have, Judge. Then we will conclude the arguments. Thank you, all the attorneys, for your arguments today. The case was well-argued, well-briefed, and will be taken under advisement.